**B.O. DAUBERT, INC., Plaintiff,**

v.

**LOCAL 44 OF the SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, Defendant.**

Civ. No. 84–0544.

United States District Court, M.D. Pennsylvania.

Dec. 23, 1985.

Jason S. Shapiro, McNees, Wallace & Nurick, Harrisburg, Pa., for plaintiff.

Ira Weinstock, McNees, Wallace & Nurick, Harrisburg, Pa., for defendant.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Plaintiff, B.O. Daubert, Inc. [Daubert] brought this action pursuant to 29 U.S.C. § 185 to vacate an arbitration award rendered on March 16, 1984 in favor of Defendant Local 44 of the Sheet Metal Workers International Association [Union]. The parties have filed cross motions for summary judgment and briefs in support thereof. Oral argument was heard on the motions on September 20, 1985. For the reasons set forth below, the Union's motion for summary judgment will be granted and Daubert's motion for summary judgment will be denied.

In order to clarify what the court considers the dispositive issue in this matter, a brief recitation of the factual background is necessary. Both parties agree that in 1975 Daubert was a member of an employer association known as the Sheet Metal Contractors Association of Northeastern Pennsylvania, Inc. [Association]. For a three-year contract period of 1978–1981, the Association and the Union were parties to a collective bargaining agreement which bound the individual employer-members of the Association.[1] Daubert admits that it was a member of the Association and thus bound by the 1978–1981 contract. In 1981, a new multi-employer agreement was executed by the Union and Association. Daubert, however, maintains that before negotiations for the new contract commenced, it withdrew its membership from the Association and, therefore, was not a party to the collective bargaining agreement covering the 1981–1984 period. The Union's position is that Daubert was a member and, therefore, bound by the contract.

On July 16, 1983, the Union filed a grievance against Daubert alleging that Daubert had breached the collective bargaining agreement by performing work at two different job sites without using Union members as required under the contract. Dau-

---

1. The Association By-Laws empower the Association to "agree upon and execute collective bargaining agreements for and on behalf of ... members with local unions affiliated with the Sheet Metal Workers International Association." Statement of Undisputed Material Facts, Document 14 of the Record at 3.

bert challenged the jurisdiction of the Local Joint Adjustment Board's authority to hear and decide the merits of the Union's grievance. In lieu of appearing before the Board, Daubert submitted a "Position Statement" challenging the Board's jurisdiction but also addressing the merits raised by the Union's grievance. By decision dated March 16, 1984, the Board found that Daubert was a member of the Association and, in utilizing non-Union members at two job sites, had violated the collective bargaining agreement. The Board assessed damages against Daubert in the amount of $33,263.00.

## II. DISCUSSION

As a general rule, it is for the court to determine whether the parties have entered into a contract which imposes a duty to arbitrate. *International Brotherhood of Electrical Workers, Local 1228 v. Freedom WLNE–TV, Inc.*, 760 F.2d 8, 10 (1st Cir.1985) (citations omitted). If, however, the issue of whether the contract is binding is based solely upon a construction of the collective bargaining agreement, then that issue may be properly decided by the arbitrator. *Id.* The court is guided by the decision rendered by the Court of Appeals for the Second Circuit in *Rochdale Village, Inc. v. Public Service Employees*, 605 F.2d 1290, 1295 (2d Cir.1979):

> If a court finds that the parties have agreed to submit to arbitration disputes "of any nature or character," or simply "any and all disputes," all questions, including those regarding termination, will be properly consigned to the arbitrator: "With that finding the court will have exhausted its function, except to order the reluctant party to arbitration...."
> In dealing with a narrower arbitration clause, a court's inquiry is not so circumscribed, and it will be proper to consider whether the conduct in issue is on its face within the purview of the clause....
> For example, if an arbitration clause covers only employee grievances, the court should not compel arbitration of questions of contract termination.... But if the arbitration clause covers disputes as

to contract interpretation, and the termination is alleged to have occurred on a basis "implicit in [the] contract," the termination question is arbitrable.

The initial issue presented in the case *sub judice* is whether Daubert was a member of the collective bargaining agreement of 1981–1984. The employer contends that this is an issue for the court while the Union argues that under the broad language of the agreement, it is a question for the arbitrator to decide. In determining this issue, the court necessarily must examine the collective bargaining agreement of 1978–1981 to which Daubert concedes it was bound. *See* Transcript of Oral Argument, Document 41 of the Record at 18.

■ Daubert contends that it withdrew its membership from the Association and, therefore, was not bound by the 1981–1984 collective bargaining agreement. In *Ottley v. Sheepshead Nursing Home*, 688 F.2d 883 (2d Cir.1982), the Court of Appeals for the Second Circuit was faced with an almost identical factual situation and argument. In *Ottley*, the employer, Sheepshead Nursing Home [SNH], was a member of a multi-employer nursing home association. On behalf of SNH, the association entered into a collective bargaining agreement. In particular, the agreement had a three-year term until March 31, 1981, which provided that "[i]f membership in the Association ... is terminated ... this agreement shall become null and void to such employer." On October 30, 1980, SNH withdrew its membership from the association. After its withdrawal, in January 1981, SNH discharged a union employee. The union demanded arbitration which SNH refused, claiming that under the terms of the collective bargaining agreement, withdrawal from the association released it from all obligations.

SNH was ordered to arbitration and the arbitrator held that its previous withdrawal was ineffective due to a failure to give 60 days notice. In the collective bargaining agreement, as previously noted, unlike the present case, there was a provision to the

effect that if membership in the association was terminated, the collective bargaining agreement would be null and void. The Second Circuit upheld the holding that the dispute should be arbitrated. In so finding, the court stated:

> We disagree with SNH's mode of analysis. By focusing initially only on section 32 of the contract [provision that membership termination rendered collective bargaining agreement null and void], SNH places the cart before the horse. As we have made clear in recent decisions, ... the arbitrability of any dispute turns in the first instance on the arbitration clause of the contract.... If its arbitration clause is broad, then we must find that the parties bargained to have any dispute that arguably falls within the scope of that clause settled through arbitration, absent compelling proof to the contrary.

*Ottley, supra* at 886 (citations omitted).

In analyzing the arbitration issue, the *Ottley* court noted the case of *Nolde v. Brothers, Inc. v. Local 358, Bakery & Confectionary Workers,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977) in which the Supreme Court held that arbitration was required even though it was conceded by the parties that the contract had terminated when the dispute arose.

> This does not mean that, in the face of claim that a contract with a broad arbitration clause has terminated, a court must always order arbitration simply because the other party to the contract requests it. In such a situation, there must at least be a colorable claim under the contract that the contract has not terminated.

*Ottley, supra* at 886. *See also International Brotherhood of Electrical Workers v. Freedom WLNE–TV, Inc.,* 760 F.2d 8, 10 (1st Cir.1985) ("Where, however, the determination of whether a contract is still in effect depends solely upon construction of the collective bargaining agreement, the issue of contract termination may appropriately be decided by the arbitrator.")

*Corallo v. Merrick Century Carburetor, Inc.,* 733 F.2d 248 (2d Cir.1984) is also factually similar to the case *sub judice.* There, the employer, a member of a multi-employer association, was a party to a collective bargaining agreement as a result of its membership in the association. The employer maintained that in 1975 it no longer was obligated under the agreement and informed the union although the union denied any such notice. The employer, however, continued to pay dues to the association and appeared on the association membership list in 1977 and 1979. Additionally, when the employer rehired a former union employee in 1976, a union card was executed and the employer remitted union dues up until the dispute arose in 1982. At this point the union discovered that the employer owed welfare, pension and dues payments on full-time employees hired since 1980. The employer maintained it was not a party to the 1980–84 agreement which was a renewal of the 1977 collective bargaining agreement between the association and the union. At the arbitration hearing, the employer challenged the arbitrator's jurisdiction and did not participate in the hearing. The arbitration award was in favor of the union.

In reversing the district court's decision to vacate the award, the Second Circuit found factual disputes regarding the termination issue precluding summary judgment resolution. Further the court stated:

> Upon remand, the initial task of the district court will be to determine whether [the] claim of contract termination involves construction of a collective bargaining agreement. If so, the issue would normally be for the arbitrator under the broad arbitration clause.... On the other hand, if the termination dispute does not turn on construction of a collective bargaining agreement, then the district court, as fact-finder, must decide the termination issue ... in order to determine whether [the employer] was bound to arbitrate the merits of the Welfare Fund dispute.

*Corallo, supra* at 253.

Arbitration clauses are to be construed broadly and "any doubts as to whether an

arbitration clause may be interpreted to cover the asserted dispute should be resolved in favor of arbitration unless a court can state with 'positive assurance' that this dispute was not meant to be arbitrated." *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk,* 585 F.2d 39, 44 (3d Cir. 1978).

In *Becker,* the defendant manufacturer and plaintiff distributor entered into a two-year agreement on July 1, 1974 with a termination date of June 30, 1976. The agreement further provided that renewal negotiations should begin not later than six months prior to expiration. Extensive renewal negotiations were held but no agreement was reached "and the contract apparently expired on June 30, 1976." *Becker, supra,* at 41. Plaintiff brought suit alleging that defendant orally agreed to renew the 1974 Agreement for a five-year period. Defendant maintained that the dispute was subject to arbitration, arguing that the dispute was one "arising out of and about" the 1974 Agreement. *Id.* at 42. The district court disagreed, ruling that the dispute arose instead from a separate and distinct oral agreement. Our Third Circuit Court of Appeals reversed noting that "we are dealing with an alleged oral agreement which, if made, was clearly made *prior* to the expiration of the 1974 Agreement, and which relates to a term of that Agreement—*i.e.,* its provisions governing renewal or expiration." *Id.* at 44 (emphasis in original). The court continued:

> Arbitration clauses are to be liberally construed. Moreover, any "doubts as to whether an arbitration clause may be interpreted to cover the asserted dispute should be resolved in favor of arbitration unless a court can state with 'positive assurance' that this dispute was not meant to be arbitrated." Given this policy, and this standard of arbitrability, we are obliged to disagree with the district court's conclusion that [plaintiff's] claimed contract renewal is not arbitrable, inasmuch as we do not think it can be said with "positive assurance" that

this dispute does not "arise out of" the 1974 Agreement.

*Id.* at 45 (citations omitted).

These cases, under this court's reading, instruct that the 1978–1981 contract's arbitration clause must be examined in order to determine if Daubert's withdrawal from the Association was an arbitrable dispute. The arbitration clause of the 1978–1981 agreement covered, *inter alia,* disputes "arising out of interpretation *or enforcement* of this Agreement" as well as *"any* controversy or dispute arising out of failure of the parties to negotiate a renewal of this agreement" and provided that all grievances were to be submitted to the Local Joint Adjustment Board (Board), a joint Union-Employer Committee. (Emphasis added). The clause encompasses *all* disputes of interpretation and enforcement and *all* disputes arising from a failure to renew. Moreover, the contract alludes to automatic renewal from year to year unless written notice of reopening is given and, in the event notice is given but the deadlock continues, further conferences and ultimate resolution on the national level is contemplated. Additionally, the termination of the contract is alleged by Daubert to have occurred *before* the termination date of the 1978–1981 agreement. The current dispute between the parties, *i.e.,* whether Daubert terminated the contract, does not involve events or transactions occurring subsequent to the termination date of the collective bargaining agreement. *See e.g., Korody Marine Corp. v. Minerals & Chemicals Philipp Corp.,* 300 F.2d 124 (2d Cir.1962) (per curiam). The dispute here relates to termination, or non-renewal, of the 1978–1981 collective bargaining agreement which is a term of that agreement *i.e.,* its provisions governing renewal or expiration. *Becker, supra* at 44. "Disputes involving the termination or continuation of contracts are properly arbitrable when renewal or expiration is the subject of specific contract provisions." *Id.* at 46–47.

The court cannot conclude with "positive assurance" that this dispute was not meant

to be arbitrated, *id.,* or that termination issue does not "arise out of" or is not "about" the 1978–1981 agreement. As a result, the court concludes that the termination issue is within the scope of the arbitration clause and an issue appropriately decided by the Board. *See Becker, supra* at 46.

■ Having determined that the matter was appropriately before the arbitrator, the court turns to Daubert's argument that the arbitration award lacked a rational basis and did not draw its essence from the collective bargaining agreement. Daubert specifically contends that there was insufficient evidence in the record to support a finding that it had not terminated its contract, that the Board erred in finding that the Union had timely filed its grievance; and that the amount of the damages assessed against Daubert was an irrational amount which did not draw its essence from the contract. These arguments will be addressed *seriatim.*

It is unquestionable that a federal district court has a very limited scope of review when reviewing the validity of a labor arbitration award. *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Provided the arbitrator's decision "draws its essence" from the collective bargaining agreement, then that decision must be upheld. *Id.* An arbitrator's decision is deemed as drawing its essence from the collective bargaining agreement if his interpretation can in any rational way be derived from the agreement. *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir.1969). Even if the arbitrator's decision is "ambiguous," or "a dubious one," or "incorrect," the court may not disturb the result. *See W.R. Grace & Co. v. Local 759, International Union of Rubber Workers,* 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983); *Teamsters Union Local No. 115 v. DeSoto, Inc.,* 725 F.2d 931 (3d Cir.1984); *Kane Gas*

*Light and Heating Co. v. International Brotherhood of Firemen,* 687 F.2d 673 (3d Cir.1982) *cert. denied* 460 U.S. 1011, 103 S.Ct. 1251, 75 L.Ed.2d 480 (1983). With these principles set forth, the court turns to the Board's decision.

The Board found that Daubert was a party to the collective bargaining agreement for the 1981–1984 contract period. In support of this finding it was stated:

B.O. Daubert, Inc. was a member of the Sheetmetal Contractors Association of N.E. Penna., Inc. on 5–1–81. Mr. Robert Gearhart's statements that he had resigned from the association and informed Mr. Austin that he would not renew his union contract after 4–30–81 were refuted by testimony by Mr. Austin and Mr. Orbin. No formal letters, to either the union or the association, to support Mr. Gearhart's statements were presented at this hearing. Prior to 5–1–81, the association held the bargaining rights of B.O. Daubert, Inc. by the reason of its association membership. (see association bylaws.) Prior to 5–1–83, B.O. Daubert, Inc. did not advise the association in writing that it was withdrawing its bargaining rights. It has, therefore, been concluded that B.O. Daubert, Inc. is a party to the collective bargaining agreement between Local Union # 44 and the Sheetmetal Contractors Association of N.E. Penna., Inc. and is bound by the terms and conditions of this agreement until 4–30–84. B.O. Daubert, Inc. continued to employ members of Local # 44 until February 1982, in compliance with the union contract.

Grievance Hearing, Document 33 of the Record, Exhibit 21.

The Brief submitted by the Union to the Board after the initial hearing [2] stated that Orbin testified that, contrary to Gearhart's assertions, Daubert continued to receive weekly newsletters mailed to association members. He also testified that before the 1981 negotiations began, he sent the Union

---

**2.** The court assumes that the union's brief accurately reflects the testimony and events at the hearing as there is no record of the proceedings before the Board. *See* Document 33 of the Record, Exhibit 13.

a list of all participating contractors which included Daubert, and that the Association's by-laws expressly provided authority for the association to enter into collective bargaining agreements on behalf of its members. There was further testimony that Daubert continued paying union wages and fringe benefits as required by the collective bargaining agreement up until February, 1982. Joint Exhibit 13 at 5–8 Document 33 of the Record at 50–53; *see also* Document 29 of the Record at 12.

The Board is entitled to weigh and assess evidence and make determinations of credibility. It was free to lend credence to the testimony of Austin (the Union representative) and Orbin (the Association representative) and reject Daubert's written statements. It is not for the court to make a *de novo* determination as to credibility.[3] The court cannot conclude based upon the Board's reasoning that this finding is capricious or irrational and did not draw its essence from the agreement. As a result, the court rejects Daubert's argument that the record was devoid of evidence supporting a finding that Daubert was a party to the 1981–1984 collective bargaining agreement.

■ Daubert next contends that there is no evidence in the record that the union grievance was timely filed. The Board's finding states that the union grievance "was filed in a timely manner after the union learned that sheetmetal work was being performed by B.O. Daubert, Inc. with workmen who were not members of Local # 44." Grievance Hearing, Document 33 of the Record, Exhibit 21. Again, the court does not review the merits but limits the scope of review to whether the decision is lacking in rationality. The Union presented evidence that Thomas Austin, Business Manager of Local # 44, upon learning of the jobs being performed by non-union members for Daubert, contacted Union's counsel and a grievance was filed. While Daubert in its Position Statement filed with the Board argued to the contrary, the

Board found against Daubert. In short, a credibility assessment was made. The court cannot overturn such an assessment. *Kane, supra* at 678 (citing *N F & M Corporation v. Steelworkers*, 524 F.2d 756 (3d Cir.1975)).

■ Finally, Daubert argues that the amount of the monetary damages assessed against it is without factual basis, thus it does not draw its essence from the contract. The court disagrees. The Board found that Daubert was in violation of the collective bargaining agreement by performing 1,798 man hours of sheetmetal work with non-union workers. Specifically, the damages were calculated as follows:

Union workmen have lost wages and fringe benefits at a rate of $18.50 per hour. Therefore, the Local Joint Adjustment Board directs that B.O. Daubert, Inc. owes the union workers, through Local # 44, $33,263.00 (1,798 hours × $18.50 per hour) in lost wages and fringe benefits. We further direct that, in fairness to all union members who may have been denied employment by the act, that the amount owed is to be paid to the Local # 44 Health and Welfare Fund.

Grievance Hearing, Document 33 of the Record, Exhibit 21.

The collective bargaining agreement provides that the Board may grant "such relief" as it may deem "necessary and proper." Daubert argues that the figure of $18.50 has no basis in fact. The collective bargaining agreement provides, however, for wages and benefits totalling $18.75 per hour. That the Board awarded less than this amount cannot be held to be irrational or arbitrary in light of the broad discretion vested in the Board to award such relief as necessary and proper. Additionally, the court does not find that because the amount is to be paid specifically to the Health and Welfare Fund rather than to other Funds, the award is without basis in fact. The Board articulated that its direction that the monies be paid to the

3. Further, having found that the Board had jurisdiction over the dispute, the Board's finding

cannot be overturned based upon later depositions taken by petitioner.

Health and Welfare Fund was an attempt to be fair to all union members. Again, the Board is vested with broad discretion under the contract and the court cannot conclude that there has been a manifest disregard of the agreement, totally unsupported by principles of contract construction and law of the shop. *Ludwig Honold, supra* at 1128.

## CONCLUSION

In conclusion, the court finds that the issue of contract termination or renewal was a matter appropriately decided by the arbitrator. Further, the court finds that the decision of the Board draws its essence from the contract.