**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 1228, AFL–CIO, Plaintiff, Appellee,**

v.

**FREEDOM WLNE–TV, INC.,
Defendant, Appellant.**

No. 84–1821.

United States Court of Appeals,
First Circuit.

Heard March 6, 1985.

Decided April 22, 1985.

Arthur M. Brewer, Baltimore, Md., with whom William J. Rosenthal, Earle K. Shawe, Baltimore, Md., Charles Hieken, Waltham, Md., and Shawe & Rosenthal, Baltimore, Md., were on brief, for defendant, appellant.

Joseph G. Sandulli, Boston, Mass., for plaintiff, appellee.

Before COFFIN and TORRUELLA, Circuit Judges, and RE,* Judge.

COFFIN, Circuit Judge.

Freedom WLNE–TV, Inc. (Freedom) appeals from a district court order compelling it to submit to binding arbitration the question of whether Freedom's contract with the International Brotherhood of Electrical Workers, Local 1228, AFL–CIO (the Union), by its own terms, continues in effect beyond its stated expiration date. 590 F.Supp. 1228. The issue, one of contract interpretation, was appropriately referred, in the first instance, to the arbitrator for determination. Accordingly, we affirm.

Freedom and the Union entered into a collective bargaining agreement (the Agreement) on November 16, 1982 which was to remain in effect through August 15, 1983, and from year to year thereafter "unless changed or terminated in the manner hereinafter made and provided." Art. 22.1. The contract required the party wishing to terminate the Agreement to notify the other in writing at least 60 days prior to the expiration date. The Agreement further provided that, "[p]ending and during the negotiation of a new contract or amendments to this contract, business of the Employer shall continue in accordance with all the terms of this contract." Negotiations to renew the contract began in May, 1983, when the Union advised Freedom of its desire to amend the current contract, and apparently continued through

* Chief Judge, of the United States Court of International Trade, sitting by designation.

at least mid-September with each side proposing, although never agreeing upon, different versions of an extension agreement.

On September 22, 1983, the Union filed a grievance which challenged Freedom's alleged use of non-union employees for certain broadcasting work. Freedom refused to process the grievance because it concerned work which was undertaken after the expiration of the contract. The Union filed a subsequent grievance on September 28, claiming that Freedom's refusal to process the earlier grievance unilaterally terminated the contract. Freedom again declined to process the grievance. On October 3, the Union sought to arbitrate the question, "[t]o what extent the contract, by its own terms, (Article 22) continues in effect beyond August 15, 1983 and what is the proper remedy." Freedom refused arbitration claiming that its obligation to arbitrate, like its obligation to process grievances, expired with the contract on August 15 due to the parties' failure to reach an extension agreement.

On cross-motions for summary judgment, the district court ordered Freedom to submit to binding arbitration. It is from that order that Freedom appeals.

*Discussion*

■ There is no duty to submit labor disputes to arbitration absent a contractual agreement between the parties to be so bound. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Generally it is up to the court to determine, in the first instance, whether the parties have entered into a contract which imposes the duty to arbitrate, *id.*, and whether that contract is still binding upon them, *see e.g., Rochdale Village, Inc. v. Public Service Employees Union*, 605 F.2d 1290, 1295 (2d Cir.1979); *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. International Telephone and Telegraph Corp.*, 508 F.2d 1309, 1313 (8th Cir.1975). Where, however, the determination of whether a contract is still in effect depends solely upon construction of the collective bargaining agreement, the issue of contract termination may appropriately be decided by the arbitrator. *Corallo v. Merrick Central Carburetor, Inc.*, 733 F.2d 248, 253 (2d Cir.1984); *Rochdale Village v. Public Service Employees*, 605 F.2d at 1296–1297.

■ Parties to a collective bargaining agreement are contractually bound to arbitrate only disputes which properly come within the scope of the agreed upon arbitration clause. It is our task, therefore, to determine whether the arbitration clause in this Agreement governs disputes regarding the termination of the contract.

We are guided in our analysis of the scope of the arbitration clause by the Second Circuit's decision in *Rochdale Village, Inc. v. Public Service Employees*, 605 F.2d at 1295–1296:

"If a court finds that the parties have agreed to submit to arbitration disputes 'of any nature or character,' or simply 'any and all disputes,' all questions, including those regarding termination, will be properly consigned to the arbitrator: 'With that finding the court will have exhausted its function, except to order the reluctant party to arbitration.' In dealing with a narrower arbitration clause, a court's inquiry is not so circumscribed, and it will be proper to consider whether the conduct in issue is on its face within the purview of the clause. For example, if an arbitration clause covers only employee grievances, the court should not compel arbitration of questions of contract termination. But if the arbitration clause covers disputes as to contract interpretation, and the termination is alleged to have occurred on a basis 'implicit in [the] contract,' the termination question is arbitrable."

The arbitration clause in the collective bargaining agreement between Rochdale and the Union covered "any and all disputes" arising under the agreement, but did not cover disputes collateral to the agreement. *Id.* at 1296. The court found, therefore, that the issue of contract termination based on application of the con-

tract's duration clause was arbitrable because it involved interpretation of that contractual provision, whereas the question of termination by a separate agreement was properly to be decided by the court.[1]

■ Freedom and the Union contracted to a broad arbitration clause which applies to "[a]ll problems arising out of grievances or out of the application or interpretation of this Agreement or the performance of any party under it." We believe that this arbitration clause reflects the parties' agreement to arbitrate any dispute involving construction of the substantive provisions of the contract, *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 571, 80 S.Ct. 1343, 1364, 4 L.Ed.2d 1403 (1960) (Brennan, J. concurring), and covers the question submitted in this case. The Union asked the arbitrator to determine the extent to which the Agreement's open-ended duration clause continued the Agreement in effect. By its own phraseology, this question exclusively addressed an issue of contract interpretation and was appropriately referred to the arbitrator for determination.

As we find all remaining arguments unpersuasive, the judgment of the district court is

*Affirmed.*

---

**1.** On the record before it the Second Circuit concluded that it was possible that the parties had entered into a collateral agreement to terminate their contract. The court identified correspondence between the parties which indicated an October 31 termination date, and noted each party's claim during state court proceedings that the contract was terminated on that date. Freedom concedes that it did not argue below that there was a collateral agreement between it and the Union to terminate the contract.