USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1029

 NEW ENGLAND CLEANING SERVICES, INC.,

 Plaintiff, Appellee,

 v.

 SERVICES EMPLOYEES INTERNATIONAL UNION, LOCAL 254, AFL-CIO,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Morris E. Lasker, Senior U.S. District Judge]

 Before

 Boudin, Circuit Judge,
 
 Coffin and Campbell, Senior Circuit Judges.
 
 
 
 
 Marcelino La Bella for appellant.
 Richard D. Wayne with whom John P. Martin and Hinckley, Allen
& Snyder were on brief for appellee.

December 20, 1999

 
 

 CAMPBELL, Senior Circuit Judge. Defendant-appellant Local
254, Service Employees International Union, AFL-CIO ("the SEIU")
appeals from a declaratory judgment denying its right to arbitrate
certain disputes. Pursuant to section 301 of the Taft-Hartley Act,
29 U.S.C. 185, the district court held that plaintiff-appellee
New England Cleaning Services, Inc. ("NECS") had terminated its
collective bargaining agreement with the SEIU and that the
effectiveness of the termination was not an arbitrable issue. We
affirm.
 BACKGROUND
 Following an evidentiary hearing, the district court
found the following facts, which the SEIU does not contest on
appeal: 
 NECS is a maintenance and service contractor. On March
14, 1994, it entered into a collective bargaining agreement ("the
Agreement") with the SEIU, which covered certain employees who
worked at Harvard University. Article XXVI of the Agreement was
titled "Grievances" and governed "[a]ll disputes arising out of
this Agreement or its application to any situation that may arise
during the term of this Agreement." 
 By its terms, the Agreement was effective until August
31, 1996; and under an "evergreen clause," the Agreement would
continue in effect thereafter until terminated by either party. A
party could terminate the Agreement if it did so in writing more
than 60 days before the stated expiration date. On August 2, 1994,
Harvard informed NECS that it was discontinuing its use of NECS's
services. On or about September 6, 1994, NECS mailed and faxed to
the SEIU a letter stating that it was terminating the Agreement due
to Harvard's discontinuance. NECS did not inform the Federal
Mediation and Conciliation Service or any state mediation agency of
its termination of the Agreement.
 On June 2, 1998, the SEIU wrote to NECS to request
information about employees within the bargaining unit and a
conference to discuss payment of union dues. The letter referred
to the "collective bargaining agreement between your company and
this union," and stated that failure to honor SEIU's requests would
result in its submitting the disputes to arbitration in accordance 
with the Article XXVI of the Agreement. On June 16, NECS responded
by stating that these grievances were untimely, because it had
effectively terminated the Agreement in 1994. On August 3, 1998,
the SEIU filed a demand for arbitration with the American
Arbitration Association ("AAA"), a not-for-profit organization that
provides voluntary dispute resolution services, claiming that NECS
had "improperly" terminated the Agreement.
 On September 17, 1998, NECS filed a complaint in the
district court against both the SEIU and the AAA. Against the
SEIU, it sought a declaration pursuant to section 301 of the Taft-
Hartley Act, 29 U.S.C. 185, that there was no collective
bargaining agreement in force between NECS and the SEIU and that
NECS was not obligated to submit to arbitration. Against the AAA,
NECS sought an injunction preventing further processing of the
demand for arbitration as well as damages for compelling NECS to
arbitrate. 
 Following an expedited evidentiary hearing, the district
court held that NECS had properly terminated the Agreement and that
there was no collective bargaining agreement presently in effect
between it and the SEIU. It further declared that even if the
Agreement were still in effect, the issue of the effectiveness of
the termination would not be arbitrable. In a companion memorandum
and order, the court dismissed NECS's complaint against the AAA on
the ground that its decision to process SEIU's demand for
arbitration was protected by arbitral immunity. See note 1, supra.
The SEIU appeals from the former ruling. 
 DISCUSSION
 We review the district court's factual determinations for
clear error, but afford plenary review to its formulation of
applicable legal rules. See Smith v. F.W. Morse & Co., Inc., 76
F.3d 413, 420 (1st Cir. 1996).
 On appeal, the SEIU does not dispute that NECS sent a
letter that was sufficient under the terms of the Agreement to
effect termination. It argues, however, that the termination was
nonetheless incomplete because NECS failed to comply with the
provisions set forth in section 8(d) of the NLRA, 29 U.S.C. 
159(d). Hence, the SEIU contends, the evergreen clause kept the
Agreement continuously alive. Moreover, it argues, whether the
Agreement was effectively terminated was an issue properly subject
to arbitration under Section XXVI.
 I.
 Section 8(d) of the NLRA, titled "Obligation to bargain
collectively," defines collective bargaining. It states, in
relevant part:
 [W]here there is in effect a collective-bargaining
 contract covering employees in an industry affecting
 commerce, the duty to bargain collectively shall also
 mean that no party to such contract shall terminate or
 modify such contract, unless the party desiring such
 termination or modification 
 (1) serves a written notice upon the other party to the
 contract of the proposed termination or modification
 sixty days prior to the expiration date thereof, or in
 the event such contract contains no expiration date,
 sixty days prior to the time it is proposed to make such
 termination or modification;
 (2) offers to meet and confer with the other party for
 the purpose of negotiating a new contract or a contract
 containing the proposed modifications;
 (3) notifies the Federal Mediation and Conciliation
 Service within thirty days after such notice of the
 existence of a dispute, and simultaneously therewith
 notifies any State or Territorial agency established to
 mediate and conciliate disputes within the State or
 Territory where the dispute occurred, provided no
 agreement has been reached by that time; and
 (4) continues in full force and effect, without
 resorting to strike or lock-out, all the terms and
 conditions of the existing contract for a period of sixty
 days after such notice is given or until the expiration
 date of such contract, whichever occurs later . . .

29 U.S.C. 159(d).
 The SEIU contends that NECS did not properly terminate
the Agreement because it failed to satisfy all of these elements. 
The district court found that while NECS had provided adequate
notice under section 8(d)(1), by faxing and mailing the termination
letter in September, 1994, it did not notify any of the federal or
state mediation agencies referenced in section 8(d)(3). The
district court did not address whether or not NECS fulfilled the
two other requirements (offering to meet and confer and keeping the
agreement in full force and effect for sixty days), and nothing in
the record sheds light on those points.
 In Communication Workers of America v. Southwestern Bell
Tel. Co., 713 F.2d 1118 (5th Cir. 1983), failure to notify
mediation services pursuant to section 8(d)(3) was held not to
defeat the effectiveness of an employer's notice of termination. 
Citing case law and legislative history, the Fifth Circuit reasoned
that 
 . . . in requiring that the party desiring to
 terminate a contract notify the mediation
 services, Congress intended only to facilitate
 the intervention of the FMCS when needed in
 contract disputes. We do not believe Congress
 meant to enact section 8(d)(3) as a hurdle
 over which a company (or union) must jump to
 effectively terminate a contract if it has
 timely notified its union (or company) of its
 intent to terminate. 
 
Id. at 1127. 
 The purposes of the section 8(d) requirements are to
"facilitate agreement" by giving parties to expiring collective
bargaining agreements adequate time to work out their differences,
free from threats of strikes or lockouts, and to place mediation
services on notice that their assistance may be necessary. Id. at
1125-26. While a failure to notify mediation services might have
ramifications for an unfair labor practice claim, it does not serve
to extend a contract that could be terminated via notice under
section 8(d)(1). See id. at 1126. See also Procter & Gamble
Indep. Union of Port Ivory, N.Y. v. Procter & Gamble Mfg. Co., 312
F.2d 181, 189 (2d Cir. 1962) (failure to give timely notice to
agencies under section 8(d)(3) did not extend the period of an
expired agreement).
 The present case is very similar on its facts to
Southwestern Bell. It was not brought to determine whether or not
NECS committed an unfair labor practice or breached the duty to
bargain collectively. Rather, the relevant issue is whether the 
Agreement was terminated. See id. at 1125. The federal policies
underlying section 8(d) would not be furthered by declaring the
Agreement to be prolonged in the present circumstances. Here, as
in Southwestern Bell, there was no threat of a strike or lockout. 
See id. Because Harvard had terminated its contract with NECS, it
does not appear there were any issues of contention between NECS
and the SEIU to be resolved; nor does it seem that a successor
agreement was likely. No practical need for the mediation services
has been demonstrated. See id. at 1126.
 The SEIU attempts to distinguish Southwestern Bell on the
ground that in that case, the employer had complied with three out
of the four requirements set forth at section 8(d), while here,
NECS complied with only one (the notice requirement set forth in
subsection (1)). Even were the record clear that NECS failed to
comply with sections (2) and (4), this distinction is not
persuasive. The SEIU points to no evidence showing how it was
prejudiced by NECS's failures to offer to meet and confer for
contract talks and to extend the contract for sixty days after the
notice of termination. See id. at 1127. Under these
circumstances, the requirements at sections 8(d)(2) and (4), like
section 8(d)(3), were not prerequisites to effecting termination of
the Agreement. 
 II.
 The SEIU also argues that the district court erred in
holding, as an alternative basis for decision, that even if the
Agreement were still viable, the issue of the effectiveness of the
termination would not be arbitrable under Article XXVI. 
 Whether a dispute concerning the termination of a
collective bargaining agreement should be adjudicated by an
arbitrator or by a court depends on whether the arbitration clause
in the agreement is "broad" or "narrow." See Int'l Bhd. of Elec.
Workers, Local 1228 v. Freedom WLNE-TV, Inc., 760 F.2d 8, 10 (1st
Cir. 1985) (citing Rochdale Village, Inc. v. Public Service Emp.
Union, Local No. 80, 605 F.2d 1290, 1295-96 (2d Cir. 1979)). Under
a broad arbitration clause, i.e. one covering all types of
disputes, "all questions, including those regarding termination,
will be properly consigned to the arbitrator." Id. A "narrow"
clause, however, covers only a limited range of disputes, such as
employee grievances. In such cases, the court has a more involved
role, and must consider "whether the conduct in issue is on its
face within the purview of the clause." Id. We have adopted the
Second Circuit's rule that under a narrow arbitration clause
covering only employee grievances, "the court should not compel
arbitration of questions of contract termination." Id.
 Here, the district court correctly determined that the
arbitration clause was "narrow." Although Article XXVI had general
language at the beginning of the section, the four-step grievance
process governed only grievances asserted by individual employees,
not complaints brought directly by the union. In the absence of
explicit indication that the parties intended Article XXVI to cover
contract termination issues, we conclude that it does not. See id. 
Accordingly, it was the proper role of the district court, not an
arbitrator, to decide whether the Agreement was effectively
terminated.
 The SEIU contends that the district court erred in
construing Article XXVI to be a "narrow" arbitration clause. While
conceding that the first three steps in the procedure pertain to
employees' grievances, the SEIU points out that step four refers to
"parties," not employees. Thus, it argues, the union could be
considered a "party" and itself submit grievances to arbitration,
including issues of contract termination.
 Step four does not, however, stand alone, but rather is
the final step in a process that can be initiated only by an
employee, not the union. Whether step four permits the union to
demand arbitration on behalf of the employee, or only the 
aggrieved employee, is academic: in either case, arbitration
relates solely to a grievance initiated by an individual employee. 
Hence, the district court correctly determined that Article XXVI's
arbitration clause covers only employee grievances and does not
contemplate the arbitration of contract termination issues.
 Affirmed.