# United States Court of Appeals
## For the First Circuit

No. 04-2303

MUNICIPALITY OF SAN JUAN,

Plaintiff, Appellant,

v.

CORPORACIÓN PARA EL FOMENTO ECONÓMICO DE LA CIUDAD CAPITAL,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. Garcia-Gregory, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Howard, Circuit Judge.

Francisco J. Amundaray-Rodriguez with whom Mercado & Soto, P.S.C. was on brief for appellant.
Roberto Abesada-Agüet with whom Harold D. Vicente and Vincente & Cuebas were on brief for appellee.

July 14, 2005

**COFFIN, <u>Senior Circuit Judge</u>.** The Municipality of San Juan, plaintiff-appellant in this action, contends that defendant-appellee Corporación para el Fomento Económico de la Ciudad Capital (COFECC) misused federal block grant funds the agency was assigned to disburse, and the Municipality consequently seeks the return of all remaining federal funds held by COFECC, damages, and declaratory and injunctive relief establishing that the trustee relationship between the two entities was properly terminated. The district court granted COFECC's motion to compel arbitration of all issues and dismissed the case without prejudice. After careful review of the facts and relevant legal principles, we affirm.

## I. <u>Background</u>

In July 1982, the Municipality and the Government Development Bank of Puerto Rico executed a deed of trust ("Deed of Trust No. 5" or "Deed of Trust") that designated the Bank, as trustee, to administer funds granted to the Municipality by the United States Department of Housing and Urban Development (HUD). The Deed of Trust contains a broad arbitration clause requiring that disputes that arise between the parties "with regard to their responsibilities and obligations under this contract" shall be resolved through arbitration. The Deed of Trust also provides that the Municipality can terminate the contract upon sixty days' notice and after appointment of a successor trustee.

-2-

In 1983, COFECC succeeded the Bank as trustee, and the transition was effectuated through a series of one-year delegation contracts between the Municipality and COFECC that renewed automatically unless written notice was given thirty days before expiration. Deed of Trust No. 5 remained the governing document for the trusteeship and was explicitly incorporated into the first several delegation agreements. Annual contracts between the Municipality and COFECC were executed through 1992, with the last written agreement terminating on June 30, 1992.[1] The parties continued their relationship beyond that point, however, through "tacit" extension of their contractual arrangement.[2] In May 2003, the Municipality sent a letter terminating the trustee agreement, giving the sixty days notice required by the Deed of Trust and thus

_____

[1] The original agreement linking the parties was titled "Contract for the Transfer of Funds" and was dated May 20, 1983, with a June 30, 1984 expiration. That document states that Deed of Trust No. 5 and Deed of Trust No. 6 (the former addressing administration of the Municipality's "Capital Independent Fund" and the latter addressing loans granted through the Fund) are enclosed "as part of this contract." The next document, titled "Contract for the Transfer and Administration of Funds and Programs," dated August 23, 1984, explicitly appoints COFECC as successor administrator of the Capital Fund, and it provides that COFECC "assumes the obligations of the Bank" under Deeds No. 5 and 6. This second contract ended on June 30, 1985, but would automatically renew in the absence of thirty-day written notice of non-renewal. A similar document dated September 12, 1985 continued COFECC's appointment under the two deeds through June 1986. The subsequent contracts, extending the relationship through June 1992, did not reference the deeds of trust.

[2] In its brief, the Municipality states that, after June 1992, "the relationship between the parties was tacitly renovated as well as the terms and conditions of the delegation agreement."

-3-

intended to take effect on July 30, 2003.  The Municipality asserts that COFECC improperly used thousands of dollars of federal money and failed to comply with regulatory requirements governing the use of federal grant funds, including maintaining an adequate accounting and auditing system.  The Municipality sought return of all unused funds.

COFECC disputed the termination of its trustee status and did not turn over any funds to the Municipality.  In August 2003, the Municipality filed this action, seeking breach of contract damages, the return of any remaining federal funds held by COFECC, and injunctive and declaratory relief terminating both the parties' relationship and COFECC's authority to use the federal monies. COFECC argued that all of the issues were arbitrable, and the district court ultimately agreed.[3]  On appeal, we review only the court's ruling that the duration of the trusteeship – i.e., the validity of the Municipality's attempt to terminate the relationship – must be arbitrated.  The arbitrability of the breach of contract issues is not before us.[4]

---

[3] In so concluding, the district court departed from the recommendation of a magistrate judge, who held that issues relating to the alleged unlawful use of funds must be arbitrated, but ruled that the question of termination did not require arbitration.

[4] The Municipality suggests in its brief that no part of its dispute with COFECC is arbitrable because their relationship was governed by the delegation contracts, which do not contain arbitration provisions.  The Municipality did not submit objections to the magistrate judge's contrary recommendation on the contract issue, however; indeed, it noted that the magistrate judge

-4-

We briefly address a preliminary jurisdictional issue before explaining why we conclude that the district court correctly referred the termination issue to the arbitrator.

## II. Discussion

### A. Finality of a Dismissal Without Prejudice

COFECC argues that the district court's decision compelling the parties to arbitrate, accompanied by dismissal of the case _without prejudice_, resulted in a judgment that was not final and appealable under the Federal Arbitration Act, 9 U.S.C. § 16(a)(3).[5] COFECC's cursory argument is arguably insufficient to warrant our full attention, see, e.g., Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 43 (1st Cir. 2003) ("Issues raised on appeal in a perfunctory manner (or not at all) are waived."), but since we view the agency's assertion as plainly without merit, we choose to take the opportunity to state so explicitly.

---

"correctly held" that "the only issues that the parties have to arbitrate . . . are the breach of contract and the resulting damages, if any." See Opposition to Defendant's Objections to the Magistrate Judge's Report and Recommendation." The Municipality may not change course on appeal, see, e.g., Burke v. Town of Walpole, 405 F.3d 66, 71 n.2 (1st Cir. 2005), and, like the magistrate judge and district court, we therefore presume that Deed of Trust No. 5 – including its arbitration provision – governed the parties' relationship at least until the attempt to terminate the agreement in May 2003. There is no dispute that the arbitration provision substantively covers the breach of contract allegations.

[5] Section 16(a)(3) provides that an appeal may be taken from "a final decision with respect to an arbitration that is subject to this title."

In Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 86-87 (2000), the Supreme Court held that a district court's order directing arbitration and dismissing all of the claims before it was "final" within the meaning of section 16(a)(3) and therefore appealable. The action in Green Tree had been dismissed with prejudice, and COFECC asserts that the Supreme Court's ruling consequently is inapplicable to dismissals without prejudice. We agree with the reasoning of other courts that have rejected this distinction. See Hill v. Rent-A-Center, Inc., 398 F.3d 1286, 1288 (11th Cir. 2005); Blair v. Scott Specialty Gases, 283 F.3d 595, 602 (3d Cir. 2002); Salim Oleochemicals v. M/V Shropshire, 278 F.3d 90, 91 (2d Cir. 2002); Interactive Flight Techs., Inc. v. Swissair Swiss Air Transp. Co., 249 F.3d 1177, 1179 (9th Cir. 2001). In brief, these courts concluded that both types of dismissal are equivalent with respect to the Supreme Court's rationale in Green Tree – that the arbitration order "plainly disposed of the entire case on the merits and left no part of it pending before the court," 531 U.S. at 86. Cf. Mirpuri v. ACT Mfg., Inc., 212 F.3d 624, 628-29 (1st Cir. 2000) (a dismissal without prejudice that entirely terminates the litigation is a final order). We therefore hold that the Municipality's appeal is properly before us.[6]

---

[6] Although not argued before us, COFECC earlier in the litigation challenged the substantive basis for jurisdiction, asserting that the Municipality's complaint did not state a federal question. After the magistrate judge initially recommended dismissal, the Municipality amended its complaint to draw a more

B. Arbitrability of the Termination Dispute

We think it most helpful to begin this discussion by reviewing several basic arbitration principles noted by the Supreme Court in AT&T Techs., Inc. v. Communications Workers, 475 U.S. 643 (1986), and derived from prior case law. See id. at 648 (referring to the Steelworkers Trilogy).[7] First, "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" Id. at 648 (citation omitted). Second, "the question of arbitrability . . .

---

explicit link between its allegations and the federal interest in ensuring compliance with the comprehensive framework of regulations governing recipients of federal block grant funds. The magistrate judge vacated his earlier ruling, relying on Supreme Court precedent recognizing that traditional state law causes of action may present a sufficiently important federal interest to warrant federal jurisdiction. See Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 199 (1921); Templeton Bd. of Sewer Comm'rs v. Amer. Tissue Mills of Mass., Inc., 352 F.3d 33, 36 (1st Cir. 2003); Penobscot Nation v. Georgia-Pacific Corp., 254 F.3d 317, 321 (1st Cir. 2001); Almond v. Capital Props., Inc., 212 F.3d 20, 22-24 (1st Cir. 2000).

Because the propriety of COFECC's conduct turns entirely on its adherence to the intricate and detailed set of federal regulatory requirements, and the funds at issue are federal grant monies, we agree with the magistrate judge and district court that jurisdiction is proper. The Supreme Court recently affirmed the continued viability of the Smith line of cases, albeit narrowly drawn. See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 125 S. Ct. 2363, 2368 (2005) (upholding federal-question jurisdiction where a state-law claim necessarily implicates a federal issue, "actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities").

[7] The Steelworkers Trilogy consisted of: Steelworkers v. American Mfg. Co., 363 U.S. 564 (1960); Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); and Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960).

is undeniably an issue for judicial determination." Id. at 649. Third, a court deciding whether the parties have agreed to submit a particular grievance to arbitration is "not to rule on the potential merits of the underlying claims." Id. And, finally, when a contract contains an arbitration clause, "'[d]oubts should be resolved in favor of coverage.'" Id. at 650 (citation omitted); see also, e.g., First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944-45 (1995). In other words, "'[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" AT&T Techs., 475 U.S. at 650 (citation omitted); see also Mobil Oil Corp. v. Local 8-766, Oil, Chemical & Atomic Workers Int'l Union, 600 F.2d 322, 328 (1st Cir. 1979) ("'In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where . . . the arbitration clause [is] quite broad.'" (quoting United Steelworkers of Amer. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584-85 (1960))).

The middle two principles pose no difficulty here. Both parties agree that the arbitrability question is for the court and that the merits do not play a role in that determination. The parties pit the first and fourth principles against each other,

however – with the Municipality claiming that the termination issue is outside the contractual arbitration provision and COFECC maintaining that, in the absence of its explicit exclusion, termination falls within the clause. Like the district court, we conclude that COFECC has the better argument. Our review of the court's decision is de novo. See Intergen N.V. v. Grina, 344 F.3d 134, 141 (1st Cir. 2003)

We first dispense with the Municipality's argument that this case implicates Supreme Court precedent on the arbitrability of post-termination disputes. See, e.g., Litton Fin. Printing Div. v. N.L.R.B., 501 U.S. 190 (1991). The dispute here is not over matters that arose following the acknowledged end of the parties' agreement, but the issue is whether termination has, in fact, properly occurred. Post-termination case law is simply inapposite in this setting.

Our focus, rather, must be on whether the arbitration provision in Deed of Trust No. 5 is reasonably construed to embrace disputes over the termination of the trustee relationship. The entire arbitration provision, section 702 of the Trust document, states as follows:

> In the event any controversy arises between the parties with regard to their responsibilities and obligations under this contract, said differences shall be resolved by arbitration. The parties should mutually agree to consent to the designation of the arbiter and shall be bound by his decision.

> The parties will equally share the costs of the arbitration.

The "responsibilities and obligations" outlined in the contract appear to include those related to the agreement's termination. Under section 604, the Municipality is obliged to give at least sixty days notice of its intent to end the relationship and to appoint a successor administrator by the termination date. That section goes on to state that, in the event of termination,

> the Administrator of the Capital Fund shall be responsible for transferring all the documents and assets, and deliver to and on behalf of the Municipality all the documents, moneys and values received with regard to the loan funds that might be in his possession, custody or control, and the prerogatives and responsibilities of the Administrator of the Capital Fund and his right to compensation shall terminate.

The parties here volley various assertions about whether the Municipality accomplished a valid termination of the Deed of Trust (as well as the subsidiary delegation agreements) and whether COFECC is therefore presently obliged to turn over all federal assets and related materials remaining in its possession. We think it fairly clear that section 604's explicit reference to both the requirements for termination and the administrator's responsibilities upon termination places these matters squarely within the arbitrator's domain as described in section 702. Even if that proposition were debatable, however, we would be obliged to reach the same outcome. We certainly could not say "with positive

-10-

assurance" that the arbitration clause is not susceptible of being so construed.  Consequently, we think it manifest that the issue of contract duration must be decided by the arbitrator.  Cf. New York News Inc. v. Newspaper Guild, 927 F.2d 82, 84 (2d Cir. 1991) (per curiam) (narrow arbitration clause limited to "grievances" does not apply to disputes over contract termination); but see Virginia Carolina Tools, Inc. v. Int'l Tool Supply, Inc., 984 F.2d 113, 118 (4th Cir. 1993) (general presumption in favor of arbitrability given "less force" on contract duration issues).[8]

In urging its contrary view, the Municipality relies most heavily on Nat'l R.R. Passenger Corp. v. Boston and Maine Corp., 850 F.2d 756 (D.C. Cir. 1988), arguing that the issue of termination is not arbitrable here because Deed of Trust No. 5 specifies a "date certain" for expiration of the contract.  In National R.R. Passenger Corp., the D.C. Circuit reasoned that "the presumption in favor of arbitrating disputes over contract duration can be overcome by a clear showing that the parties intended for the underlying contract to expire, or separately agreed to terminate it, before the relevant dispute arose."  Id. at 763.

_____

[8] We note that the contract at issue in Virginia Carolina Tools had a more specific termination date than Deed of Trust No. 5: 60 days from the date of the execution of the agreement.  See 984 F.2d at 115.  The court relied on this "express termination date provision" to support its view that the parties did not intend to arbitrate the contract's duration, noting that there was "no incipient issue of contract duration in the parties' memorialized agreement, hence no built-in likelihood of dispute over its duration."  Id. at 118.

Such a showing would be accomplished, the court explained, if the contract clearly "provides that it will expire on a date certain." Id.

Even under a "date certain" test, however, the Municipality's position falters. The instant contract expires only after two prerequisites are fulfilled: written notice given sixty days in advance and substitution of a successor administrator. We need not address now whether a conditional expiration provision could ever be considered sufficiently "certain" to overcome the presumption in favor of arbitrability; the touchstone, after all, is not the language formula chosen but what the language reveals about the particular parties' intent. See, e.g., PaineWebber Inc. v. Elahi, 87 F.3d 589, 599 (1st Cir. 1996) ("[T]he intent of the parties always controls what is to be arbitrated."); Nat'l R.R. Passenger Corp., 850 F.2d at 760 ("[O]ur task is to discern the choice of the parties, not to make a choice of our own."); see also First Options, 514 U.S. at 943 ("[A]rbitration is simply a matter of contract between the parties[.]"). Here, the parties' debate concerns both the efficacy of the notice given and whether notice was necessary at all – matters that cloud the time of termination. Without a fixed endpoint for the Deed of Trust, and otherwise lacking "'forceful evidence of a purpose to exclude the [termination] claim from arbitration,'" Mobil Oil Corp., 600 F.2d at 328 (citation omitted), the Municipality is unable to make the

-12-

"clear showing" of non-arbitrability required by the court in <u>Nat'l R.R. Passenger Corp.</u>  In sum, we see no basis for departing from the general principle that all doubts be resolved in favor of arbitration.

<u>     The judgment of the district court is therefore affirmed.</u>