# United States Court of Appeals
## For the First Circuit

No. 10-1667

UNITE HERE LOCAL 217,

Plaintiff, Appellee,

v.

SAGE HOSPITALITY RESOURCES,
d/b/a Renaissance Providence Hotel,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND
[Hon. William E. Smith, U.S. District Judge]

Before

Lipez, Circuit Judge,
Souter, Associate Justice,*
and Howard, Circuit Judge.

Norman R. Buchsbaum, with whom Louis J. Cannon, Jr., Law
Offices of Norman R. Buchsbaum, W. Mark Russo, Moshe Berman, and
Ferrucci Russo P.C. were on brief, for appellant.
Michael T. Anderson, with whom Murphy Anderson PLLC, Amato
A. DeLuca, and DeLuca & Weizenbaum Ltd. were on brief, for
appellee.

April 29, 2011

*Hon. David H. Souter, Associate Justice (Ret.) of the Supreme
Court of the United States, sitting by designation.

**LIPEZ, <u>Circuit Judge</u>.** Appellant Sage Hospitality Resources ("Hotel") seeks review of a district court order compelling it to submit to arbitration a dispute over the meaning of ambiguous language in the duration clause of a neutrality agreement between the Hotel and appellee UNITE HERE Local 217 ("Union"). As the parties agreed to a broad arbitration clause that unambiguously encompasses their dispute, we hold that the issue was properly consigned to the arbitrator for resolution. We therefore affirm.

## I.

The Hotel and the Union entered into a neutrality agreement ("Agreement") on June 9, 2003, in anticipation of the renovation of a dilapidated structure in downtown Providence into the Renaissance Providence Hotel. The Agreement set forth a process allowing the Union to organize the Hotel's employees and to seek recognition as their collective bargaining representative; in turn, the Union would refrain from engaging in any picketing or economic activity against the Hotel.

Three provisions of the parties' Agreement are relevant to this case. First, the Agreement established a "card check" procedure, by which "[t]he Union may request recognition as the exclusive collective bargaining agent for [the Hotel's] Employees."[1]

---

[1] The Agreement provides that upon the Union's request, an arbitrator

-2-

Second, the Agreement provided for binding arbitration of "any dispute over [its] interpretation or application":

> The parties agree that any dispute over the interpretation or application of [the Agreement] shall be submitted to expedited [sic] and binding arbitration pursuant to [the] procedures below. . . . The parties hereto agree to comply with any order of the arbitrator, which shall be final and binding, and furthermore consent to the entry of any order of the arbitrator as the order of judgment of the United States District Court for the District of Rhode Island without entry of findings of fact and conclusions of law.

Finally, the duration clause of the Agreement stipulated that the "Agreement shall be in full force and effect from the date it is fully executed . . . until thirty months from the full public opening of the hotel, or if sooner upon the Employer's recognition of the Union." The Agreement did not define the term "full public opening."

A dispute over the meaning of this term arose on January 5, 2010, when the Union requested recognition from the Hotel pursuant to the card check procedure. The Hotel declined the request, characterizing it as untimely. In the Hotel's view, the "full public opening" occurred on June 1, 2007, when it held a ceremony marking the "opening of the hotel doors." This event, says

---

will conduct a review of Employee's authorization cards and membership information submitted by the Union in support of its claim to represent a majority of such Employees. If that review establishes that a majority of such Employees has designated the Union as their exclusive collective bargaining representative or joined the Union, the Employer will recognize the Union as such representative of such Employees.

the appellant, was preceded by a "soft opening" in which it had already begun renting out a small number of rooms and holding events. According to the Hotel, the Agreement expired on December 1, 2009, thirty months after June 1, 2007, and it thus was no longer obligated to participate in the card check procedure.

The Union then demanded arbitration over the meaning of the term "full public opening," alleging that the "full public opening" instead occurred on August 21, 2007, when the Hotel held a ribbon-cutting and gala. The Hotel rejected the arbitration demand, again relying on untimeliness in arguing that its obligation to honor the arbitration clause of the Agreement expired on December 1, 2009, along with the Agreement itself.

On January 7, 2010, the Union filed in federal court a petition to compel the Hotel to submit to arbitration. The Union argued that the meaning of the term "full public opening" was for the arbitrator, who should decide the threshold issue of whether the Agreement was in effect, as well as the ultimate issue of the results of the card check procedure. The Hotel countered that the court should determine whether an agreement to arbitrate continued to bind the parties. It maintained that the term "full public opening" did not need to be construed by an arbitrator, because either it was not an ambiguous term or it was tantamount to a "date certain." To the extent evidence was needed to determine the date of the full public opening and hence the duration of the Agreement,

the Hotel argued that the court, not an arbitrator, should conduct an evidentiary hearing.

In an Opinion and Order dated May 4, 2010 ("May 4 Order"), the district court granted the Union's petition. See UNITE HERE Local 217 v. Sage Hospitality Res., 722 F. Supp. 2d 161, 163 (D.R.I. 2010) [hereinafter UNITE HERE I]. Relying primarily on this court's holdings in International Brotherhood of Electrical Workers, Local 1228 v. Freedom WLNE-TV, Inc., 760 F.2d 8 (1st Cir. 1985), and New England Cleaning Services, Inc. v. Services Employees International Union, Local 254, 199 F.3d 537 (1st Cir. 1999), the district court determined, inter alia, that this case was "directly in the path of the rule consigning termination disputes to arbitration if the agreement includes a 'broad' arbitration clause" and ordered the parties to arbitration. UNITE HERE I, 722 F. Supp. 2d at 168; see also id. at 165.

A week later, the Union moved to enforce the district court's judgment. In response, the Hotel filed a motion to stay the court's order pending appeal and, in the alternative, for reconsideration. It assayed an argument not previously raised: that this circuit's law on the arbitrability of termination disputes was "implicitly overruled" by the Supreme Court's decision in Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002), under which the parties' dispute, the Hotel claimed, would presumptively be for a court to decide. In an Order and Opinion dated September 24, 2010

("September 24 Order"), the district court granted the Union's motion to enforce the judgment and denied the Hotel's motion to stay.  See UNITE HERE Local 217 v. Sage Hospitality Res., 722 F. Supp. 2d 169, 171 (D.R.I. 2010) [hereinafter UNITE HERE II].  The court granted in part the Hotel's motion to reconsider by "clarif[ying]" certain parts of its May 4 Order; however, it declined to withdraw any part of that order.[2]  Id. at 177-78.

The Hotel appeals, asserting that the district court erred in concluding that the question of what "full public opening" means, and thus whether the Agreement was still in effect at the time the Union demanded the card check and arbitration, is for the arbitrator, and not the court, to resolve.[3]

_____

[2] We denied on October 18, 2010, the Hotel's emergency motion for a stay of arbitration pending appeal or, in the alternative, for a protective order.

[3] The Hotel also seeks review of a determination by the district court, set forth as "[a] second factor supporting" its May 4 Order and later "clarif[ied]" in its September 24 Order, that "the rule allowing arbitration of disputes after a contract expires might still secure the relief the Union seeks." UNITE HERE I, 722 F. Supp. 2d at 168; see also UNITE HERE II, 722 F. Supp. 2d at 178. We decline to reach this issue, as we find ample support in our caselaw for sending the parties' dispute to the arbitrator without invoking post-expiration arbitrability.

-6-

The central question here is whether a court or an arbitrator should decide whether the Agreement was in effect at the time it was invoked by the Union. The Union points out that the resolution of that question turns on the meaning of the phrase "full public opening" as it appears in the duration clause of the Agreement. It contends that this is a straightforward issue of contract interpretation, which the Agreement's arbitration clause and relevant First Circuit law assign to the arbitrator. As its main rejoinder, the Hotel posits that the parties' conflict implicates a question of arbitrability under Howsam, 537 U.S. 79, and hence is presumptively for a court to decide. To the extent our precedents might require a different outcome, the Hotel argues, we should declare them overruled by this subsequent Supreme Court precedent.

We review a district court's order compelling arbitration de novo, S. Bay Boston Mgmt. v. Unite Here, Local 26, 587 F.3d 35, 42 (1st Cir. 2009), and we are "not wedded to the lower court's rationale, but, rather, may affirm its order on any independent ground made manifest by the record," Kristian v. Comcast Corp., 446 F.3d 25, 31 (1st Cir. 2006) (quoting InterGen N.V. v. Grina, 344 F.3d 134, 141 (1st Cir. 2003)). In our review, we focus only on the threshold issue of arbitrability; we do not rule on the merits of

the underlying claims.  AT&T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 649-50 (1986).

**A.        The General Legal Framework: Does the Dispute Fall Within the Scope of the Parties' Arbitration Clause?**

It is axiomatic that arbitration is a creature of contract.  See United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960).  Where there is a validly formed and enforceable arbitration agreement, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute."  Granite Rock Co. v. Int'l Bhd. of Teamsters, 130 S. Ct. 2847, 2856 (2010) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995); AT&T Techs., 475 U.S. at 648-49).  Our focus in this inquiry is to determine and effectuate the parties' intent, not to substitute our own preferences.  Municipality of San Juan v. Corporación para el Fomento Económico de la Ciudad Capital, 415 F.3d 145, 151 (1st Cir. 2005).

Here, the parties' dispute concerns the interpretation of the duration clause of the Agreement.  We may only affirm the district court's order compelling arbitration if this issue is within the scope of the parties' arbitration clause.  That clause of the Agreement provides that "any dispute over [the Agreement's] interpretation or application" shall be submitted to binding arbitration.  The parties did not place any limitations on that language, and certainly did not exclude controversies relating to

-8-

the duration or termination of the contract. A question as to the meaning of the term "full public opening" is manifestly a "dispute over [the Agreement's] interpretation or application." Accordingly, by its own phraseology, the arbitration clause applies to the issue in dispute, which was appropriately referred to the arbitrator for resolution.

This result, grounded in the unambiguous language of the parties' arbitration clause, also comports with our precedents. Inquiring into the scope of similar arbitration clauses, we have concluded that they encompass disputes over the interpretation of duration language. In International Brotherhood of Electrical Workers, Local 1228 v. Freedom WLNE-TV, Inc., 760 F.2d 8, for example, we considered an arbitration clause that covered "[a]ll problems arising out of grievances or out of the application or interpretation of [the a]greement or the performance of any party under it," and inferred from this broad language "the parties' agreement to arbitrate any dispute involving construction of the substantive provisions of the contract." Id. at 11. We thus held that the employer was required to submit to arbitration the question of whether its agreement with the union continued in effect beyond its stated expiration date. Id. Likewise, in Municipality of San Juan v. Corporación para el Fomento Económico de la Ciudad Capital, 415 F.3d 145, we declared it "manifest" that "the issue of contract duration must be decided by the arbitrator," where the arbitration

-9-

clause covered "any controversy aris[ing] between the parties with regard to their responsibilities and obligations under this contract."  Id. at 150; cf. Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 451-52 (2003) (plurality opinion) (suggesting that where "parties agreed to submit to the arbitrator '[a]ll disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract,'" a "dispute about what the arbitration contract . . . means . . . is a dispute 'relating to this contract'" and constitutes evidence that "the parties seem to have agreed that an arbitrator, not a judge, would answer the relevant question").

The appellant acknowledges that the Agreement's arbitration clause covers a broad range of matters.  On appeal, the Hotel stakes its hopes on the claim that under the Supreme Court's decision in Howsam, 537 U.S. 79, its dispute with the Union must be considered a question of arbitrability that is presumptively for a court to resolve.[4]

---

[4] The Hotel also raises a less serious argument that a court should resolve the parties' dispute because the Agreement contains a "date certain" for expiration.  The Agreement's duration clause did not set a "date certain."  The parties logically made the duration of the Agreement contingent on the hotel's "full public opening" to accommodate unforeseen construction delays.  Moreover, the very fact that the parties each have offered plausible but competing theories of when the hotel "opened" indicates that the date was anything but certain.  See Municipality of San Juan, 415 F.3d at 151 (rejecting the "date certain" theory on similar grounds).

-10-

**B.** **The _Howsam_ Framework: Does the Dispute Raise a Question of Arbitrability?**

In _Howsam_, the Court observed that "[a]lthough [it] has . . . long recognized and enforced a 'liberal federal policy favoring arbitration agreements,'" 537 U.S. at 83 (quoting _Moses H. Cone Mem'l Hosp._ v. _Mercury Constr. Corp._, 460 U.S. 1, 24-25 (1983)), it has also carved out an exception to this policy: the threshold "question of whether the parties have submitted a particular dispute to arbitration, i.e., the '_question of arbitrability_,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" _Howsam_, 537 U.S. at 83 (quoting _AT&T Techs._, 475 U.S. at 649; _First Options_, 514 U.S. at 944). In other words, questions of arbitrability are subject to a presumption _against_ arbitration and in favor of judicial resolution. This difference in treatment is animated by "the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration" and should not be compelled to arbitrate arbitrability unless it committed itself to doing so. _First Options_, 514 U.S. at 945.

But _Howsam_ emphasized that "question of arbitrability" is a term of art with a narrow scope:

> The Court has found the phrase applicable in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to

-11-

> the court avoids the risk of forcing parties to arbitrate
> a matter that they may well not have agreed to arbitrate.

Howsam, 537 U.S. at 83-84. Consequently, Howsam specified that only certain "substantive" gateway matters are subject to the anti-arbitrability presumption, id. at 85 (quoting Revised Unif. Arbitration Act of 2000 § 6 cmt. 2, 7 U.L.A. 13 (Supp. 2002)), and identified "two categories of disputes where [that presumption clearly applies]: (1) disputes 'about whether the parties are bound by a given arbitration clause'; and (2) disagreements 'about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy,'" Kristian, 446 F.3d at 39 (quoting Howsam, 537 U.S. at 84); see also id. (clarifying that "[e]xamples of the former include whether an arbitration contract binds parties that did not sign the agreement[,] and whether an arbitration agreement survived a corporate merger and bound the subsequent corporation," and "examples of the latter include whether a labor-management layoff controversy was covered by the arbitration clause of a collective-bargaining agreement[,] and whether a clause providing for arbitration of various grievances covers claims for damages for breach of a no-strike agreement"). In contrast, "'procedural' questions [that] grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide." Howsam, 537 U.S. at 84 (quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964)) (internal quotation mark omitted).

-12-

In defending against the arbitration demand, the Hotel maintains that the dispute between it and the Union implicates a substantive question of arbitrability and, as such, should presumptively be for the court to decide. The contrary results required by Freedom WLNE-TV and like cases, the Hotel insists, demonstrate that our precedents are inconsistent with the Court's recent caselaw and should be repudiated.[5] The Union counters that Howsam requires no reconsideration of our law; that the parties' dispute does not fit into the types of exceptional questions Howsam reserves presumptively for the courts; and that even if their dispute were to be characterized as a substantive question of arbitrability, the presumption in favor of judicial resolution would nonetheless be overcome by the parties' clearly manifested intent to arbitrate a dispute over the interpretation of the duration clause of the Agreement. We agree with the Union.

The Hotel's absolutist position that contract expiration issues are necessarily substantive questions of arbitrability proves too much. Not all questions of contract duration are alike.[6] Cf.

_____

[5] Given the Hotel's view on how significant a change to the law was wrought by Howsam, we find it curious and telling that it did not even mention Howsam until its May 26, 2010, reply to the Union's motion to enforce the district court's May 4 Order.

[6] The Hotel suggests without much in the way of analysis that Granite Rock Co. v. International Brotherhood of Teamsters, 130 S. Ct. 2847, supports its position. That case, however, dealt with the arbitrability of a dispute over the date of contract formation, where the contract's arbitration clause limited its coverage to disputes that "arise under" the contract. See id. at 2855-56, 2860-61. Not only does the present dispute not involve an issue of

-13-

<u>Granite Rock Co.</u>, 130 S. Ct. at 2860 n.11. (emphasizing that "it is not the mere labeling of a dispute for contract law purposes," but "whether the parties consented to arbitrate the dispute," that determines whether an issue is arbitrable).  In this instance, the parties dispute the meaning of language in the duration clause of the Agreement -- a classic issue of contract construction and one the parties clearly contemplated would be resolved by an arbitrator.  This type of grievance "concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties."  <u>Green Tree</u>, 539 U.S. at 452.  Indeed, the parties do not contest that the Agreement was valid, that they were subject to its requirements, and that the substantive scope of the arbitration clause is clear.  The present dispute is therefore not a substantive question of arbitrability but a "matter of contract interpretation [that] should be for the arbitrator, not the courts, to decide."  <u>Id.</u> at 453.

In any event, even if we were to agree with the Hotel that a duration dispute of the type at issue here could be characterized as a question of substantive arbitrability and thus

contract formation, <u>cf.</u> <u>Nat'l R.R. Passenger Corp.</u> v. <u>Boston & Me. Corp.</u>, 850 F.2d 756, 762 (D.C. Cir. 1988) (distinguishing duration disputes from formation disputes on the theory that "[w]hen there is an issue of formation, the court cannot be sure that the party resisting arbitration ever viewed the arbitrator as competent to resolve any dispute"), the arbitration clause here is broader than the one at issue in <u>Granite Rock</u>.  It covers not just disputes that "arise under" the Agreement but instead "any dispute over [the Agreement's] interpretation or application."

-14-

presumptively reserved for judicial determination, the presumption would be overcome by the clear and unmistakable intent of the parties to arbitrate controversies such as the one raised here. See First Options, 514 U.S. at 943. The breadth of the arbitration clause, which covers "any disputes over [the] interpretation or application" of the Agreement, presents an insurmountable impediment to the Hotel's position.

### III.

The parties to this grievance negotiated a broad arbitration clause memorializing their intention to arbitrate all questions of contract construction. Whether categorized as an issue of substantive arbitrability or not, the instant dispute over the meaning of language in the duration clause is one that the parties clearly anticipated would be resolved by an arbitrator, not a court. See Howsam, 537 U.S. at 83. In these circumstances, we must enforce the bargain the parties struck and allow the arbitrator to decide the issues they committed to her resolution. The district court's order compelling arbitration is, accordingly, **affirmed**. Costs are awarded to the Union.

**So ordered.**